and Brooks, case number 19-4156. Mr. Young, you represent the appellant. You may proceed. Thank you. Good morning, your honors, counsel. May it please the court, Michael Young on behalf of Jacob Dockstader, the appellant in this case. I appreciate the opportunity to address the court and as I was preparing for argument today, as is often the case, reviewing and sort of reading and rereading the pleadings and then specifically reviewing the precedent and sort of the Utah law on the issue, I think the issue can be distilled down to a fairly simple proposition and that is, under Utah law, when an insurer takes upon itself the defense of a third-party claim, that insurer assumes certain fiduciary duties, specifically a duty to defend. This is a duty independent and separate from any contractual duties that may exist or emanate from the insurance contracted issue and what's critical about this observation is that those duties then provide certain obligations and requirements on the part of the insurer to what the Utah Supreme Court has coined or has stated, to zealously guard the interests of the insured. Now that is, again, a requirement and a duty that is separate and distinct from any first-party duties that can be found in the operative insurance agreement itself and that that fiduciary duty requires certain conduct. So, counsel, let me ask you a question. So, generally in the insurance defense area, there are two duties, the duty to defend and the duty to indemnify, right? Correct. And they can exist independently of each other. For example, you might have a question about the duty to indemnify, but that doesn't relieve you of the right to provide a defense if you're the insurer. Absolutely, yes. So, which one of those categories do you put the settlement dollars in? Are they part of the indemnity or are they part of the defense? I don't see how they can be in both places without making a reservation of rights sort of illusory. Sure. So, and if I understand your honor's question correctly, is how then is an insurance company supposed to adequately evaluate offers of settlement given that they have both a duty to indemnify and a duty to defend? Is that a fair characterization of your question? Not exactly. I want you to put the settlement dollars in a category, either defense or indemnity. Okay. So, I think that the settlement dollars themselves would be considered part of the evaluation of whether to accept or deny or decline settlement extends from the duty to defend. And in fact, if you look, I think it's in the Campbell case, the Utah Supreme Court specifically discusses the duty to settle as an offshoot or as part of that duty to defend. And so, when you look at the case law beginning back in 1960 with Ammerman and as it sort of takes upon the defense of once an insurer takes upon the defense of an insured, it has essentially taken away from the insured the ability to negotiate and to articulate a potential settlement, right? So, they have taken that opportunity away from its insured and is now assumed by the insurer. So, part and parcel to that duty to defend then is a specific requirement to consider settlement offers in the context of how such offers may affect the insured specifically, whether or not rejecting such offers would expose the insured to excess liability beyond that which is capped for the insurance company with respect to its duty to indemnify. So, the dollars itself, while they are, I guess, constrained by the policy limits which are outlined in the duty to indemnify or constrained by that duty to indemnify, the obligation to consider settlement offers and to settle is an extension of the fiduciary duty to defend which as outlined in Campbell and then later, I think, expressly sort of described in Altman is a requirement that the insurer consider the obligate, the zealously guard or consider the exposure that the insured may have, if that makes sense. So, what if you have a case where there's no settlement offer and the insurance company's a trial and lose and the insured has a $300,000 judgment against them and the insurance company then says, but I'm not paying it because I picked up this defense under a reservation of rights. Okay. How is that different than this case? Because there was no offer of settlement. There was no opportunity for the insurer to limit the exposure of the insured or to guard the insured's interest within the context of that offer of settlement. I have a kind of follow-up to that. I mean, your position boils down to the proposition that the insurance company has a fiduciary duty to settle reasonable settlement to accept reasonable settlement offers, even if they're paying out for non-covered claims, right? In their view. Yes. Fair enough. And it seems to me that that position requires the company to pay greater amounts out than the insurance contract it entered into with the policyholder. And is that the law of Utah? No. And I actually don't think that's necessarily the case. And so, part of the dynamic at issue here is an insurer can, in fact, go out and seek a declaratory judgment finding that there is no coverage to protect them from, in fact, paying out offers that it shouldn't pay out because there is no coverage. That's what was going on here, right? Yes. The problem is that owners did not seek declaratory judgment until a year after the case had been going on. And so, the underlying personal injury matter had sort of reached a point where settlement offers were being exchanged, where an investigation of the underlying facts of the case had revealed that settlement was, in fact, appropriate and likely. If you look at the settlement letters that were exchanged between the parties, there's no dispute of liability and there's no dispute that the potential injuries to the initial plaintiff would exceed the policy limits. The only question was whether there was coverage under the policy under the duty of indemnity. Essentially, what Auto Owners is asking this court to do is to offload the, essentially, the price of its own delay in seeking declaratory judgment, offloading the price of the cost of that delay with respect to determining whether or not there was coverage to its insured. And, in fact, what the law says, and this is where I think the finding in Campbell is particularly informative on this issue, and that is you can't, after the fact, just as in Campbell, where the insurer offered to pay the excess monies that came from the judgment, although they had disputed their obligation to do so for three years, finally, the insurer comes back and says, you know what, we will pay the excess costs of the judgment, so no harm, no foul. And what the court in Campbell said was, no, that's not accurate, because if we allow for or hear it's a determination that there is no coverage, we are not encouraging our insurers to follow through on that fiduciary duty to zealously guard their insured's interests. What's the company's remedy if they end up paying uncovered, non-covered claims? Then they can seek reimbursement from their insured. If there's anything I have learned in my years as a lawyer is insurance companies are certainly adept at advancing and seeking subrogation for costs that they have paid that they do not feel that they can pay. There are also other issues that, there are other things that the insurance company could do at the point of receiving settlement. They could relinquish the defense, they could turn the defense back over to the insured, but the reality is none of that, candidly, is before this court. The real question before this court is whether or not a determination of no coverage and a declaratory action absolves an insurance company from its violation of its fiduciary duty to defend its insured's interests. Or I thought part of your argument was that under Utah law insurance companies are told that it is totally proper for them when they have a question as regards coverage to file a declaratory judgment action. And so owners said, I thought they were saying, we're good here. We did that. We have followed what Utah law requires us to do. And you're saying, oh, not so fast. You have to do more than that. You can't just and that's, and that's where I think the Durham's concurrence and Altman is instructive because she expressly notes that yes, it is within the purview of the insurance company's rights to seek a declaratory judgment regarding coverage, but simply doing so does not absolve them of their obligation or their duty to defend during dependency of that action. And because there are still obligations under the duty to defend of which include a duty to settle and to, and to consider settlement opportunities in the, in the interest of the insured, you are not absolved of that duty simply because you filed a deck action and filing a deck action does not essentially hit pause and allow you to pursue that action without zealously guarding the, the interest of the questions at this time. I'm happy to, to reserve the remaining of my time for rebuttal and turn the time over to Ms. Nelson. Thank you. Counsel Nelson. You may proceed. May it please the court. Good morning. My name is Anna Nelson for owner's insurance company. This court should affirm the lower courts ruling because owners did not act in bad faith and had no duty to settle during the pendency of a declaratory action. Owners followed the course for insurers recommended by the Utah Supreme court in summer Hayes when uncertain about coverage owners tenor to defense and sought a declaratory action as to coverage under the policy. There's no Utah case law supporting any requirement for a duty to settle during the pendency of a declaratory action or bad faith would ensue. But there is Utah law to say that there's a making just filing this, just filing the deck action doesn't end your responsibility in this case, right? Yeah. It's finally a deck action doesn't end your responsibility to defend. Campbell relies heavily on the Campbell versus state farm case and the Utah court of appeals in that case did indicate that when there's a substantial likelihood of a judgment rendered and an excess of those in excess of policy limits you have a duty to accept that offer. But in Campbell, there was no question as to coverage and there's no Utah case law stating that an insurer has a duty to accept a cover. It has a duty to accept a settlement during the pendency of a declaratory action or bad faith would ensue. And the reason why I'd be bad, but if that's, if that's the approach, aren't you just leaving the assured, insured out there, defenseless in essence? No, your honor, we, because all of this is going on, these claims are being made and, and the action is proceeding and you're ending up, obviously in this case, with a judgment that's pretty high that somebody's going to have to pay. And meanwhile, the duty to, the duty to defend is just, is not happening. Nothing's happening. The duty to defend was happening. If you look at the underlying record and look at the, and look at the complaint that was filed at the same time that the complaint was filed, you know, owner's insurance company hired, hired, hired an attorney to represent Mr. Dockstader on their behalf. Mr. Dockstader had his own personal attorney, owner's insurance company hired experts on his behalf to rebut the allegations of his injuries. In fact, if you look at the record and the underlying docket, it indicates that there was a motion to even exclude some of Mr. Brooks' experts before a settlement and consent assignment was entered on 926 of 18. And so owner's was defending at the same time that it was filing a death action and never withdrew that defense. But owner's is allowed to, to rebut coverage and to ask the court as to its rights under the policy. And the reason why, and reason why it would be poor public policy to allow an insurer not to contest those is it would force insurers to indemnify non-covered claims. Imagine an instance where premeditated murder takes place, the murderer's found guilty. Before we get to murder, uh, hasn't, hasn't counsel given you the relief? If you are paying for a non-covered claim, you simply seek reimbursement. There is a right. You, I mean, obviously that's the other alternative that he mentioned was that, uh, that an insurance company should seek right. But advancing Brooks' arguments would guarantee that any injured plaintiff, no matter how egregious would be paid by the policy, whether the claim is covered or not covered. And the Utah Supreme court specifically indicated in the U S fidelity versus us sports specialty case, the Utah law does not allow an insurer to seek reimbursement or restitution through an extra contractual claim. Instead, an insurer's right to reimbursement from an insurer must be expressly prohibited, provided for between the insurance policy between the parties. And Mr. Brooks noted in his reply brief that owners didn't have that in their policy. So owners will be stuck with having to pay out the 500,000 and not seek reimbursement from Mr. Dockstader. And so the policy governs going back to my argument that it would force insurers to indemnify against non-covered claims. Basically, according to Brooks, if an intentional murder takes place, the estate sues claiming negligent homicide. As soon as the duty to defend is and the insurance companies file the deck action, but it obviously a value of a life could exceed the policy limits, bad faith would ensue. The insurance policy ceases to be an agreement between the insurance company and it's insured where the insurance company assumes defined risk encountered by it's insured. Instead, the policy becomes merely a roadmap of how craftily a complaint can be drafted to trigger defense. It would render the policy meaningless. In this case, should we consider the underlying procedures that aligned the, um, the Brooks and Dockstader together? Is that relevant to the legal, your legal argument? Where I, where Brooks, Mr. Dockstader assigned his claims to, um, Mr. Dockstader. So that the claims are aligned for purposes of the appeal is my understanding. You're not alleging that there's anything improper about that, are you? That's not the issue of appeal nor who we raised that issue. Needless to say insurance, basically the policy would be rendered meaningless and the insurer is compelled to settle all claims covered or otherwise under its duty to defend. Needless to say, Utah insurance in Utah be either unavailable or prohibitively expensive. Well, don't you have a duty to defend the insured to accept settlement offers within policy limits? When there's a substantial likelihood that the judgment will be in excess of those limits? Yes, that's the Campbell versus State Farm case. But in the Campbell versus State Farm case, the Utah court of appeals was only addressing a covered claim. And our opening brief, we pointed out that in that case, it was dealing with the car accident and State Farm was never contesting coverage. State Farm admitted, I have a 25,000 per person, 50,000 per accident. And they essentially gambled their insurance interest and said that there was no liability in the underlying lawsuit. They were taking the position that their insurance was not liable. And so the Utah Supreme Court said, look, if there's a substantial likelihood, there's no coverage issues. You can't gamble your interest. But it's important to note that Utah Supreme Court noted in the Ammerman versus Farmers Insurance Exchange that it indicated that it's true that in a company cannot properly gamble with or it's neither practical nor reasonable to expect it to subvert its own interest. And that's exactly what Brooks is asking owners insurance company to do. Utah's approach is a reasonable one. It allows an insured the protection of a defense when allegations may trigger coverage, but it protects the insurer from a collusive and dubious suits by allowing it to file and litigate a declaratory action to determine whether coverage actually exists and has a duty to this system also bargains. It also honors the bargain made between the parties. The insured is covered for negligent acts, but it is not covered as is here, where the insured intentionally acted to damage another. I'm sorry, Your Honor. Go ahead. Oh, no, no, I'm sorry, Your Honor. I was just wondering if you had litigated your deck action to conclusion and lost, would your client then be on the hook for this bad faith claim? No, no, Your Honor. I mean, if you look at the record, specifically at the record of 588 to 589 on June 27th of 2018, owners insurance company did send a letter indicating that we didn't want to control the settlement negotiations. We said you can stay the underlying action, which Utah law said there's no requirement for them to stay the underlying action. But we indicated that if there's coverage, we'll pay the 500,000. If there's no coverage, we won't pay the 500,000. If you guys want to continue on with the litigation, then great. I think that's a different question. So it sounds to me like you're trying to push off all the risk on your insured debt. If you win the deck action, you win, no bad faith. And if you lose the deck action and there was an underlying indemnity obligation, you win. Because you said, I want to get it decided. It doesn't seem to me you can have it both ways. It seems that maybe you were playing a little roulette yourself. And that if you lost the deck action and there is coverage, then the bad faith claim perhaps has legs. Certainly, Your Honor, the bad faith legs does have legs. And the court did recognize that in the fire insuring stains versus omens. When insurers don't take the duty to defend, the Utah Supreme Court and Utah Court of Appeals have indicated that, look, if it's discovered that there's coverage and there's an excess, then you might be responsible for that excess amount of money. So if it turns out that you only have a $500,000 policy and the excess is $1 million, you might be on the hook for that million if you're not defending and controlling the settlement negotiation. So if there's ever a doubt, the Utah Supreme Court indicated it's best to defend and then challenge coverage. But yes, the bad faith claim would still ensue like it did in the Campbell case as well, Your Honor. Brooks asked his court to create new law that under Utah law, an insurer must accept a settlement offer within the policy limits, regardless of whether the claim is covered whenever the insurer is defending. The lower court did rule that the actions of Mr. Dockstader were non-accidental as a matter of law. Brooks nor Dockstader has appealed that issue. And so for purposes of this appeal, the actions were not covered. There's no compelling reason nor legal support for expanding the law to require an insurer to pay admittedly uncovered claims solely because it's chosen to fulfill its legal and contractual obligations to defend the insured. Brooks wants to penalize the owner's insurance company for defending and defending and filing the declaratory action. In the fire insurance exchange versus the estate of Therkelson, the Utah Supreme Court indicated that the duty to defend is often described as broader than the duty to indemnify because an insurer may have a duty to defend an insured like here, but ultimately not be responsible to indemnify the insured. In closing, owners follow the recommendations outlined specifically by the Utah Supreme Court in Summer Hazen Call to suggest otherwise would distort the contract between the parties and turn control over to the contract of the plaintiff's attorneys with an incentive to expand coverage far beyond the party's intent and for which no premium was paid. Does the judges have any further questions for me? Thank you, counsel. I think we have some rebuttal for Mr. Young. Thank you, your honors. Yeah, I think at the outset it's important to clarify one issue and that is nowhere in the appeal or the underlying papers have we advanced the position that owners must settle when presented with a settlement offer. In fact, the case law is pretty clear that you have to, the test in terms of whether you are fulfilling your fiduciary duty to defend and as a corollary your duty to settle, the test there is reasonableness. What we are arguing here is that upon receiving a settlement offer for policy limits in the face of a situation where the settlement offer on the basis that coverage is being litigated in a separate action and I think the facts of this case actually really highlight the issue here and why in Altman the court said that even during the pendency of a declaratory judgment action you have an obligation to zealously guard the insured's interests is because the settlement offer was given to the attorney that owners had hired on behalf of Mr. Dockstader. This attorney ostensibly was supposed to be working in Mr. Dockstader's interests. That attorney then takes the settlement offer, sends it to the insurance company and says here you go with no assessment of the facts whether liability is contested or not the only thing that the attorney says is of course coverage is an issue. That attorney who was ostensibly working on behalf of Jacob Dockstader then proposes for the plaintiff a heads I win tell you lose proposition hey coverage is being contested we'll pay policy limits if it turns out that coverage applies but we're not going to pay if we win the deck action. There was absolutely no consideration in terms of protecting the interest of Mr. Dockstader at the point that settlement overture was made. In fact the only consideration made by the insurance company was whether or not they could protect themselves from and it's in that respect that State Farm I think is informative and really instructs the court to have a finding that there was no consideration of or there was no fulfillment of the obligation to perform their duties in good faith and that's because State Farm and I guess I would take issue with counsel's characterization of the State Farm finding their coverage was contested for three years State Farm said we do not have an obligation nor will we pay the excess monies of the judgment beyond the policy limits. At the end of the case State Farm came forward and said okay you know what we were wrong on that we will pay excess limits as a result no harm no foul we did not we are not going to merge the concepts of indemnification and bad faith bad faith is an independent duty and obligation failure to perform your your defense in good faith during dependency even if you defend it you cannot absolve yourself of a violation of the good faith obligation simply by paying at the end or in this case winning a declaratory action finding no smarter minds deal with this. Thank you counsel we appreciate your arguments the you'll be excused and the and the case will be submitted.